IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| KEVIN ROSENTHAL<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 2:13-cv-04150<br>) |
| MISSOURI DEPARTMENT OF<br>CORRECTIONS, et al.,<br>    Defendants. | )<br>)<br>)<br>) |
| DEONTA DUDLEY,<br>    Intervenor. | )<br>)<br>) |

# ORDER

Pending before the Court is Defendants' Motion to Exclude Dr. Thomas Horejes as an Expert Witness (Doc. No. 80).

**I.     Background**

Plaintiff filed the pending action on June 11, 2013. Plaintiff and other putative class members are deaf or hard-of-hearing inmates in the custody of the Missouri Department of Corrections (MDOC). Defendants are (1) MDOC, (2) George Lombardi (Director, MDOC), (3) Ed Davis (Superintendent, Ozark Correctional Center), and James Hurley (Superintendent, Northeast Correctional Center) and (5) various John Doe defendants. Plaintiff and intervenor, Deonta Dudley, seek declaratory and injunctive relief, as well as damages, on their own behalf for alleged discrimination by Defendants against deaf and hard-of-hearing inmates in the custody of MDOC. First Amended Complaint, Doc. No. 60, pp. 6-9.   They also sought declaratory and injunctive relief on behalf of a putative class; however, this Court recently denied plaintiffs' motion for class certification.   See Doc. No. 107.

Defendants move for an order excluding the testimony of Dr. Thomas P. Horejes. Dr. Horejes is an individual who has been deaf since birth (Doc. No. 80, Ex. B, at 1). He is employed at the following: 1) as the "Executive Director of a 501(c)3 non-profit charity in Saint Louis, Missouri whose philosophy is to provide services for deaf/hard-of-hearing, hearing individuals, and the community as a whole to ensure effective communication and cultural awareness. This purpose is accomplished through a meaningful unity of community outreach, training, education, advocacy, media, visual arts, and interpreting," and 2) as "Assistant Professor of Sociology and Criminology at Gallaudet University where [he has] taught courses that range from Introduction to the Criminal Justice System, Fundamentals of Criminal Justice, Inequality, and similar topics. Gallaudet University is the world's only liberal arts university serving primarily deaf and hard of hearing students." Doc. No. 80, Ex. B, at 1.

Dr. Horejes' written report includes the following information:

* ASL is the language of majority of deaf people in the United States (Doc. No. 80, Ex. B., at 2)

* English and ASL are "two entirely separate whole languages," and ASL is the first language of some deaf people (Id. at 2)

* Historically, those "who are hearing often determine the accessibility and communication needs for deaf individuals. In the spirit of providing effective and transparent communication, it is the rule of thumb to first ask the deaf individual what would be considered effective communication through auxiliary aids and services. (Id. at 3)

* In some situations, a deaf individual may not want to have an ASL interpreter present (Id. at 3)

* Use of lip-reading, gestures, or written English to communicate with deaf persons have significant limitations (Id. at 5).

* Many prisons require deaf people to wear safety vests when outside, so they can be identified by guards if they fail to cooperate with verbal/auditory instructions. (Id. at 6).

* "There is a common assumption that all deaf people are homogeneous and that all deaf people know ASL. This is false." Id. at 7.

* The two widely used forms of communication for deaf individuals are teletypewriters (TTYs) and video phones. Ex. B at 6. Some deaf people prefer TTYs, while others prefer videophones. Id. at 6. Dr. Horejes also explains the technology behind these forms of communication. Id.

* With respect to incarcerated individuals, "If a deaf inmate is in a situation where it requires high level of interactivity, use of complex exchange of words, and/or a situation that is severe. . . then it may be possible that the only effective communication is an ASL interpreter." Id. at 7-8.

* "If hearing people are privileged to take rehabilitative classes, religious services, educational classes, and similar services of that nature, then deaf people must be extended the same level of equal access whether it is the use of an interpreter or a real-tine [sic] captioning service which is the instant translation of the spoken word into English text using a stenotype machine, notebook computer and realtime software." Id. at 8.

* With respect to the specific allegations in plaintiff's complaint, Dr. Horejes concludes that MDOC does not have adequate policies/procedures in place for deaf individuals, and MDOC "needs to revisit their policy and procedures when it comes to the ADA and to ensure provision of auxiliary aids/services to arrive at effective communication." Doc. No. 80, Ex. C, at 3. Dr. Horejes bases this conclusion on his review of grievances filed by plaintiff and intervenor, along with definitions given in websites and in the ADA.

## II. Standard

To be admissible, expert testimony must be both relevant to a material issue and reliable. Hale Cnty. A & M Transp., LLC v. City of Kansas City, Mo., 4:12-CV-00265-DGK, 2014 WL 462432 (W.D. Mo. Feb. 5, 2014) (citing Margolies v. McCleary, Inc., 447 F.3d 1115, 1120 (8th Cir. 2006)). Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility. Larabee v. MM & L Int'l Corp., 896 F.2d 1112, 1116 n.6 (8th Cir. 1990). Additionally, the party moving for the admission of

3

such testimony must satisfy four requirements: (1) the expert's technical, scientific, or other specialized knowledge will help the finder of fact to determine a fact in issue or to understand the evidence; (2) the testimony is based on sufficient data or facts; (3) the testimony is the product of reliable methods and principles; and (4) the expert has reliably applied such methods and principles to the methods of the facts of the case. Fed.R.Evid. 702.

### III. Analysis

Upon consideration of the admissibility of Dr. Horejes' testimony, the Court finds that defendants' motion to exclude should be granted. In particular, the Court finds that Dr. Horejes' report as to the specific claims of the plaintiff and intervenor relies on definitions supplied by the ADA and various websites, which amount to little more than the assertion of legal conclusions, which are not admissible as expert testimony. See In re: Acceptance Ins. Companies Securities Litig., 423 F.3d 899, 905 (8th Cir. 2005). Additionally, this Court believes that the finder of fact will be able to decide the ultimate issues without expert testimony. See Rottlund Company, Inc., v. Pinnacle Corp., 452 F.3d 726, 732 (8th Cir. 2006). Therefore, for the foregoing reasons, Defendants' Motion to Exclude Dr. Thomas Horejes as an Expert Witness (Doc. No. 80) is **GRANTED.**

**IT IS SO ORDERED.**

Dated:   December 4, 2014
Kansas City, Missouri

/s/ Fernando J. Gaitan, Jr.
Fernando J. Gaitan, Jr.
United States District Judge